UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH EVERROAD, <br><br> Plaintiff, <br><br> v. <br><br> JOHN GALIPEAU, <br><br> Defendant. | CAUSE NO. 3:20-CV-488-JD-MGG |

OPINION AND ORDER

Joseph Everroad, a prisoner without a lawyer, proceeds on an Eighth Amendment claim against John Galipeau, the warden at Westville Correctional Facility, seeking permanent injunctive relief for medical treatment for an alleged brain injury. The warden has moved for summary judgment. ECF 127. Everroad filed a response[1] to that motion, and the warden filed a reply. ECF 130, 133. The motion is ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the

---

[1] Everroad included a request for summary judgment within his own response. However, the document was filed after the dispositive motion deadline, and does not contain the required Statement of Material Facts, so the request will not be considered. *See* ECF 70, 190; N. D. Ind. L. R. 56-1. Even if it were considered, summary judgment for Everroad would not be appropriate for the reasons described below.

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## I. MATERIAL FACTS

Everroad is a prisoner at Westville Correctional Center. He is being treated for numerous chronic conditions, including diabetes, congestive heart failure, chronic obstructive pulmonary disease, irritable bowel syndrome, and hypertension. *See* ECF 133-1 at 13-15. He alleges that he also suffers from a neurological disorder that the Westville medical staff refuses to treat.[2] He claims that this condition has caused him seizures, "profound muscle rigidity," dysphagia, tremors, and bleeding from his ear. ECF 130-1; ECF 123-1 at 6. Although Everroad complained of tremors and seizures as early as 2014, *see* ECF 123-2 at 57, he believes that his condition is getting worse and he is dying from it. He proceeds on a claim for injunctive relief to secure constitutionally

---

[2] Specifically, Everroad alleges that he suffers from "degenerative brain disease resulting from traumatic brain injury, which then results in chronic traumatic encephalopathy, as well as a form of Parkinson's disease." ECF 130 at 2.

adequate medical care for a "seizure-related traumatic brain injury causing bleeding from his left ear." ECF 3.

The Westville medical staff believes that Everroad is exaggerating his symptoms and complaints. For example, on December 2, 2019, he was seen at a sick call due to "uncoordinated movements." ECF 24-2 at 29. The nurse reported:

> Upon questioning, he states he has a [history] of traumatic brain injury, with worsening "seizures". When sitting, his arms and leg movements lack coordination, are jerky, unsteady, with to-and-fro motion. However, when he got excited in conversation and raised his hands over his head. . . his movement was swift, direct, and coordinated. At the end of the visit, when sitting in the waiting area, he barely moved, until he noticed he was being watched.

*Id*. The medical staff concluded that based on the inconsistency of his tremors, and the fact that he seemed to control them, no further treatment was needed beyond continual monitoring of his condition. *See id*. at 32; ECF 24-1, ¶¶ 12-14, 19.

On July 10, 2020, Dr. Andrew Liaw noted that "no outside records have corroborated" Everroad's complaints of seizures, but directed that he be observed in the infirmary for 23 hours, "out of abundance of caution." ECF 62-7 at 103. At one point during the observation period, he was found standing next to his bed and shaking. A nurse described the shaking as "unbelievable," noting that he appeared to be able to control it. *Id*. The following day, he had "steady and constant" tremors, but no seizure activity. *Id*. at 66. By the end of the observation, the medical staff found no evidence that Everroad suffers from seizures. *Id*. at 45. He had "tremors/uncoordinated movements" that "appeared more pronounced when patient interacts [with staff] or establishes eye

contact." *Id*. The tremors stopped when he was sleeping. *Id*. He was released from observation with no pain, dysphagia, or muscle rigidity. *Id*. at 47.

Everroad continued to complain of seizures and tremors. *See*, *e.g.*, ECF 123-2 at 70, 75, 95. On October 26, 2020, a Wexford ophthalmologist saw him for a vision test, and wrote a note "recommend[ing]" that Everroad see a "general neurologist for extreme tremors." ECF 123-2 at 7. He did not see a neurologist, and on November 12, 2020, Dr. Liaw signed a declaration[3] stating that in his judgment, no neurologist was necessary: "While I understand the eye specialist's perspective, I believe the medical staff at WCF treating Everroad, having seen him in person numerous times . . . have a more complete understanding of his health care needs." ECF 96-1, ¶ 5. Everroad was continually monitored; among other issues, he was placed on a pureed diet on a trial basis to address his complaint of dysphagia, and was treated for bleeding from his left ear[4]. *Id*., ¶ 9; ECF 96-2 at 10, 17.

The Westville medical staff often noted that the complaints of tremors were inconsistent or exaggerated. On February 1, 2021, Everroad was seen for a mental status exam, and the examiner noted that his "whole body [was] jerking." ECF 133-1 at 11. On

---

[3] The declaration was filed with the court in opposition to Everroad's November 2, 2020 motion for a temporary restraining order. *See* ECF 90.

[4] Everroad has had ongoing problems with his left ear, which he relates to his alleged neurological condition. On June 21, 2020, he was seen by the medical staff for a suspected rupture of the membrane of his inner ear, which was treated with antibiotics. ECF 62-7 at 99. Between June 25, 2020 and August 16, 2020, he was extensively monitored, including having his ear cleaned and examined by medical staff fourteen times. *See id*. at 1-119. On several occasions, he was observed or presumed to have been bleeding from the ear. *See*, *e.g.*, *id*. at 1, 51, 117, 119. The medical staff has not identified any common cause for these problems. One instance was attributed to a small polyp in his ear; on another occasion, a nurse suspected that he stuck something in his ear and damaged it. *See* ECF 24-2 at 20; ECF 62-7 at 51.

4

February 26, 2021, at another mental status exam, his posture was described as "rigid." *Id*. at 20. On March 29, 2021, he said he was having difficulty walking and complained that the staff did not enlist someone to help him walk, but the staff noted that he walked "without difficulty and without assistance." *Id*. at 31. On April 12, 2021, he reported that he had a seizure, hit his head, and felt like he was "going to have another one." *Id*. at 33. A nurse responded to the emergency call and found Everroad "ambulating fine," with a small injury on his forehead. He acknowledged that he may not have had a seizure, because he "just woke up on the floor." *Id*. On April 15, 2021, at an unrelated medical appointment, he did not shake or tremor at all. *Id*. at 41.

Most recently, on May 11, 2021, Everroad had a 45-minute appointment with Dr. Liaw. *Id*. at 45. Dr. Liaw noted that Everroad "'shook' with varying intensity throughout the entire visit . . . towards the very end of the visit, [he] stopped shaking for about 5 seconds and then restarted." Dr. Liaw described this as "inconsistent . . . when taking previous encounters into account." *Id*. at 45-46. Everroad wanted to maintain a pureed diet, but Dr. Liaw noted that a patient with dysphagia would have more problems with a liquid diet than a solid one. He noted that Everroad's weight was stable, and it did not appear that he needed the diet. *Id*. at 46. Everroad made no documented complaint of pain, muscle rigidity, or seizures. *Id*. at 45-46. He was scheduled for a follow-up appointment for continued monitoring. *Id*. at 46.

## II. ANALYSIS

Although inmates are entitled to constitutionally adequate medical care, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d

5

954, 965 (7th Cir. 2019), nor to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The fact that the diagnosis may be incorrect is not enough; the medical professional must be aware of a substantial risk and deliberately fail to act despite that risk. *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000). Therefore, mere disagreement with a doctor about the best course of treatment does not establish an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). That deference also extends to a professional's judgment that a patient does not need treatment because he is malingering or exaggerating his symptoms. *See Fitzgerald v. Greer*, 324 F. App'x 510, 515 (7th Cir. 2009); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428–29 (7th Cir. 1991).

      The warden argues that Everroad has received constitutionally adequate medical care. Addressing Everroad's specific claim of a seizure-based neurological disorder that causes tremors, the warden notes that no member of medical staff has ever witnessed him having a seizure, and that the medical records document Everroad's ability to stop, start, and exaggerate his tremors. Everroad does not contest the validity of the medical

6

records[5], but nonetheless alleges that he has a traumatic brain injury and Parkinson's disease. He presents a declaration stating that he is suffering from seizures, tremors, pain, bleeding from the ear, dysphagia, and muscle rigidity. ECF 130.

Because Everroad is the non-movant, the court construes all facts and draws all reasonable inferences in his favor. *Ogden*, 606 F.3d 358. However, the fact that Everroad asserts he has an untreated illness does not itself establish a constitutional claim. *See Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017) ("Lloyd's disagreement is irrelevant. He is not competent to diagnose himself, and he has no right to choose his own treatment."). At the summary judgment stage, the court must consider Everroad's allegations in combination with the undisputed facts and assess whether a jury viewing all these facts could reasonably find that he has not received constitutionally adequate medical care. *See, e.g., Boyd v. Pollard*, 621 F. App'x 352, 355-56 (7th Cir. 2015) ("Initially it may appear as though this fact dispute would preclude summary judgment. However, summary judgment would have been improper only if a jury reasonably could find [an Eighth Amendment violation].") (citations omitted). Here, no jury could reasonably find that the Westville medical staff is knowingly disregarding a substantial risk of serious harm to Everroad, or that the staff's treatment decisions have been beyond the scope of professional judgment.

---

[5] Although Everroad previously accused defense counsel of misleading the court by submitting only portions of the medical record, *see* ECF 79 at 2, he has not contested the validity of any medical record submitted in support of summary judgment.

Everroad alleges that he has a seizure-based neurological disorder, but despite his repeated claims, no member of the medical staff has observed him to have a seizure. Although he has reported incidents he believes to be seizures, the staff has not found evidence to corroborate that. Dr. Liaw placed him under observation to evaluate whether he was suffering from seizures, and found no evidence that he was. On that basis, the staff has not diagnosed him with seizures or offered him treatment for a seizure-based disorder. Although Everroad disagrees with the staff's judgments, he has not shown why a competent professional would not address his complaints in the same way.

Everroad attributes his tremors and other symptoms to the alleged neurological disorder, again based on his own self-diagnosis. The Westville medical staff has repeatedly concluded that his complaints of tremors did not require treatment other that continual monitoring, based on their documented observations that he was stopping, starting, and exaggerating his tremors.[6] This judgment, like the staff's other treatment decisions, is entitled to substantial deference. *Fitzgerald*, 324 F. App'x at 515 ("[The doctors] decided to treat Fitzgerald . . . based on their professional assessment of his medical history and the lack of objective indications of pain, and we will not second-guess their decisions."). The record shows that Everroad suffers intermittent bleeding in his ear, but contains no evidence that this is related to any kind of neurological issue.

---

[6] The ophthalmologist's recommendation that Everroad see a neurologist for tremors does not defeat summary judgment; the fact that two doctors' recommendations may differ does not mean that either of them is offering constitutionally inadequate care, especially when they have different levels of familiarity with the patient. *See Lloyd*, 721 F. App'x at 494 ("disagreement among the doctors" does not establish a claim for denial of medical care).

While the medical staff has not ascertained the cause of each instance of bleeding, Everroad has not shown that the staff's response to his ear problems – regularly cleaning his ear and examining it for damage, and addressing any damage that they found – differed from what a competent professional would do.

The record shows that Everroad continues to be monitored, including for the symptoms relevant to this claim. At his most recent visit with Dr. Liaw on May 11, 2021, the doctor again noted that he was shaking in a way that was inconsistent with his complaints of uncontrollable tremors. ECF 133-1 at 45. The doctor also noted that Everroad's description of his dietary issues, his lack of difficulty swallowing, and his stable weight were inconsistent with severe dysphagia. *Id*. at 45-46. Although Everroad continued to insist that he has a traumatic brain injury, he did not complain of pain or seizures at this appointment. He was scheduled for a follow-up appointment, and there is no evidence that he is being restricted from seeking medical help in the future if his condition changes.

The court concludes that a reasonable jury could not find that Everroad is receiving constitutionally inadequate medical care for an alleged neurological disorder. Affording all reasonable inferences in his favor, and considering his alleged facts and the undisputed medical records, he has not shown that the Westville medical staff is consciously disregarding a substantial risk of substantial harm to him, or that the staff's treatment decisions have exceeded the scope of professional judgment. *Walker*, 233 F.3d at 499.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 127);

(2) DISMISSES this case; and

(3) DIRECTS the clerk to enter judgment in favor of the defendant and against the plaintiff.

SO ORDERED on May 25, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT